TEXAS & P. RY. CO. v. MOODY et al.
(No. 1274.)

(Court of Civil Appeals of Texas. Texarkana. July 4, 1914. Rehearing Denied Oct. 8, 1914.)

1. RAILROADS (§ 350*)—CROSSING ACCIDENTS —QUESTIONS FOR JURY.

In an action for the death of a person struck by the train at a crossing, evidence *held* to make questions for the jury as to whether the statutory signals were given and as to contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

2. APPEAL AND ERROR (§ 501*)—RESERVATION OF GROUNDS OF REVIEW—EXCEPTIONS.

The refusal to give requested charges will not be reviewed, where the record contains no bill of exceptions to such refusal.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2300–2305; Dec. Dig. § 501.*]

3. RAILROADS (§ 350*)—CROSSING ACCIDENTS —CONTRIBUTORY NEGLIGENCE—FAILURE TO LOOK AND LISTEN.

The failure of a person to look and listen for an approaching train at a highway crossing is not negligence per se.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1152–1192; Dec. Dig. § 350.*]

4. APPEAL AND ERROR (§ 1060*)—HARMLESS ERROR—ARGUMENT OF COUNSEL—IMPROPER REMARKS.

In an action for death in a crossing accident, though the petition alleged negligence in having an engine and train of cars standing upon a side track near the crossing and in permitting steam to escape with a loud noise from the engine, the court submitted only the issue of whether the statutory signals were given. Defendant's attorney, referring to the testimony of witnesses that they did not hear the bell or whistle, stated that, according to their testimony, the engine was emitting steam, and the noise was so loud that they were unable to hear the bell or whistle, and that no witness had said that such signals were not given. In reply plaintiff's attorney referred to the engineer's testimony that the standing engine and train completely cut off his view from the south, and said that, taking into consideration the fact that he was running at a high rate of speed and had not blown any whistle and was not ringing the bell and could not see any one approaching the crossing from the south, it seemed to him almost like criminal negligence. *Held*, that, even though the language was unwarranted, it was not such an impropriety as required a reversal; it not being likely that it caused the rendition of an unmerited verdict.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4135; Dec. Dig. § 1060.*]

Appeal from District Court, Harrison County; H. T. Lyttleton, Judge.

Action by Phebe Moody and others against the Texas & Pacific Railway Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

F. H. Prendergast, of Marshall, for appellant. Lane & Lane and M. B. Parchman, all of Marshall, for appellees.

HODGES, J. In March, 1913, Dan Moody, the husband of the appellee Phebe Moody, was struck and killed by one of the appellant's trains as he was crossing the track in the village of Scottsville in Harrison county. This suit was brought by the widow and children of the deceased to recover the statutory damages.

[1] The evidence shows that the appellant's line of railway runs east and west through Scottsville, and is there crossed at right angles by a public road. The stores of the village are situated on the south side of the railway track. On the date of the injury two passenger trains going in opposite directions were to pass at the depot at Scottsville. The train from the east had arrived and was standing on a side track about eight feet south of the main line. The train from the west was due to pass about that time. Neither of these trains was scheduled to stop at Scottsville, but passed at that point on this occasion because of one of them being late. Isaiah Jackson, a witness for the plaintiffs, who was with Moody at the time the accident occurred, testifies substantially as follows: The rear end of the train standing on the side track was just clear of the crossing. Witness left Hudson's store on the south side of the track in company with Moody to cross over to the north side at the public crossing. They were starting home, and were expecting to join other parties in a wagon waiting for them on the north side. As they were crossing the railroad the train going east struck and killed Moody. Witness did not hear the train coming, and did not know that it was coming. The first time he saw the train was after he got on the track, and it was then right at him, so close that it brushed him as he jumped off. Witness was in front, and Moody about one step behind. He did not hear any bell ring or any whistle blow. The train was running pretty fast. After Moody was hit the train ran down some distance, stopped, and backed to the place where the injury occurred. On cross-examination he stated that standing on the track he could see a train coming about 50 or 100 yards distant. He saw the train standing on the side track, and was expecting the eastbound train to come right away, but did not know that Moody was expecting it, had not talked with Moody about it, and the latter had said nothing on the subject. Those trains usually met at Waskom, and did not ordinarily stop at Scottsville. Witness was about one step in advance of Moody at the time the latter was struck. Other witnesses testified to substantially the same facts. The trainmen testified that the whistle was blown for the crossing, and the bell was rung.

Several witnesses, who were sufficiently near the railway to hear these signals had they been given, testified that they did not hear them. There was some testimony tending to show that the through trains in passing Scottsville sometimes omitted the giving of the required signals. The jury returned a verdict in favor of the appellees for $1,500.

[2] The first four assignments of error complain of the refusal of the court to give designated special charges requested by the appellant. The record contains no bill of exceptions to the action of the court in refusing those instructions, and the assignments will not be considered. The grounds upon which we decline to consider the instrument relied on as a bill of exceptions are sufficiently stated in St. L. S. W. Ry. Co. of Texas v. Wadsack, 166 S. W. 42. See, also, Ry. Co. v. Galloway, 165 S. W. 546.

[3] We do not think it could be said as a matter of law that Moody was guilty of contributory negligence. It has been frequently held in this state that the failure to look and listen for an approaching train is not negligence per se. The testimony shows that the train standing on the siding was emitting steam and making considerable noise. This noise, coupled with the fact that the approaching train could not be seen by Moody until after passing the rear end of the coach standing near the public road, are facts to be considered in determining whether or not a person of ordinary prudence would have gone upon the track without taking further precautions. The trial court submitted only one ground of negligence, and that was the failure to give the statutory signals. The state of the evidence was not such as to require the court to hold as a matter of law that they were given. There was an issue of fact for the jury.

[4] Appellant presents the following assignment:

"The court erred in granting M. B. Parchman the right to discuss before the jury matters of supposed negligence on the part of the railway company in leaving the train on the side track emitting steam, which had been withdrawn from the jury and not submitted to them by the charge of the court, as is shown by bill of exceptions No. 1."

In their pleadings the appellees had alleged that the appellant was guilty of negligence in having an engine and train of cars standing upon the side track and too near the crossing, and in permitting steam to escape with a loud noise from the engine. But the court did not submit that issue. The bill of exceptions as qualified shows that the attorney for the appellant spoke of this engine standing upon the side track and emitting steam, and stated that, according to the testimony of the plaintiffs' witnesses, this noise was so loud that they were unable to hear the bell or the whistle of the locomotive; that those witnesses had not said that the signals were not given, but that they did not

hear them, and that was because of the noise made by the escaping steam. M. B. Parchman, an attorney for the appellees, in replying to this argument used the following language:

"Now, gentlemen, take the testimony of Bell, who was on the engine, and J. D. Scott, who was in his garden about 75 yards north of the track and in full view of same. Bell testified that the passenger train was standing on the side track where it filled in the gap between the warehouse and the station house, and the tail end, extending below the station to the road crossing, completely cut off his view from the south, and he could not see any one approaching the crossing from the south on account of the train standing there until he reached the crossing, and that J. D. Scott swore that the train was running at a high rate of speed, now taking into consideration the fact that Bell, the engineer, was running at a high rate of speed and had not blown any whistle and was not ringing his bell, and could not see any one approaching the crossing from the south, it seems to me like—I don't know how it is with you—but it seems to me like that it was almost criminal negligence."

Counsel for appellant thereupon arose and objected to the remarks of Mr. Parchman for the reason that the court had not submitted that issue as a ground of recovery, and asked for a bill of exceptions to the remarks of Mr. Parchman that it was criminal negligence for the train to be standing upon the siding. It appears that these remarks were not made by permission of the court, but before the court's attention was called to the matter. But if it can be said that the language was unwarranted by the record, it is not such an impropriety as will require a reversal of the judgment. It is not likely that it caused the rendition of an unmerited verdict.

The judgment of the district court is affirmed.